IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Crystal L. Wickersham, | ) |
| | ) Civil Action No. 9:13-cv-01192-DCN |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Ford Motor Company, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| Crystal L. Wickersham, as Personal Representative of the Estate of John Harley Wickersham, Jr., | ) Civil Action No. 9:14-cv-00459-DCN |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Ford Motor Company, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF OR RELATING TO THE CAUSE OF THE COLLISION**

Plaintiffs Crystal L. Wickersham, individually, and Crystal L. Wickersham, as Personal Representative of the Estate of John Harley Wickersham, Jr., (collectively "Plaintiff") move this Court for an order excluding any evidence of or relating to the cause of the initial collision in this crashworthiness product liability case. The grounds for this Motion are that the evidence is not relevant; alternatively, it is unfairly prejudicial and likely to confuse or mislead the jury.

**RELEVANT FACTS**

In this product liability action, Plaintiff alleges Ford Motor Company ("Ford") negligently designed and manufactured the airbag system in Plaintiff's 2010 Ford Escape. On the night of February 3, 2011, while driving during a rain storm, Mr. Wickersham lost control of

1

the vehicle, went off the road, and collided with a tree. The driver's side airbag deployed late and, rather than protecting Mr. Wickersham, it caused severe, permanent injuries to his face. He later committed suicide as a result of the chronic pain caused by the defective airbag system.

Mr. Wickersham did not remember how the accident happened. (ECF # 38-1 p. 58). He told Mrs. Wickersham that he did not fall asleep or have any kind of episode while driving. *Id.* at pp. 58-59. A highway patrol officer responded to the scene of the accident (Exh. 1, Concepcion Depo. p. 10 ). The officer testified Mr. Wickersham was driving under the posted speed limit, between 40 and 45 miles per hour on a road with a 50 mile per hour speed limit. *Id.* at pp. 19, 35-36. The officer cited the cause of the accident to be that Mr. Wickersham "was going a little too fast for the condition of the road" considering the rain storm. *Id.* at p. 43 lns. 8-9. The officer also agreed that he did not really know why the vehicle ran off the road. *Id.* at p. 44 lns. 4-6.

Ford asserts comparative negligence as a defense (ECF # 3 ¶ 20), and Plaintiff expects Ford will attempt to introduce evidence that Mr. Wickersham is at fault for the initial collision and to indicate that he attempted to commit suicide in the collision.[1] The Court should exclude this evidence, including the citation for driving too fast for conditions, because the cause of an initial collision is irrelevant in a crashworthiness case concerning only enhanced injuries caused by the occupant's second collision with the vehicle. Further, allowing Ford to introduce evidence of the cause of the collision would be unfairly prejudicial and would confuse and mislead the jury.

## ARGUMENT

Plaintiff asserts causes of action for negligence, strict liability, and breach of warranty. (ECF # 1-1). In South Carolina, comparative negligence is not a defense to strict liability or

---

[1] Plaintiff is filing a separate motion in limine to exclude all references to or insinuation that Mr. Wickersham attempted to commit suicide in the accident.

2

breach of warranty. *See Fleming v. Borden*, 316 S.C. 452, 457, 450 S.E.2d 589, 593 (1994) (referring to "the 'no fault' 'strict liability' setting of the mode[rn] products case"); *Restatement (Second) of Torts* § 402A cmt. n (noting comparative negligence "is not a defense" to strict liability absent proof that the plaintiff "discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably" to use the product); *Wallace v. Owens-Illinois, Inc.*, 300 S.C. 518, 523, 389 S.E.2d 155, 157 (Ct. App. 1989) ("In South Carolina, contributory negligence is an affirmative defense to an action for negligence. It has no application to an action based on breach of warranty . . . ."). Therefore, evidence of the cause of the initial collision is irrelevant and inadmissible as to those causes of action. For this reason, and those discussed below, the Court should exclude evidence of the cause of the initial collision as to all causes of action.

### I. Evidence of the Cause of a Collision is Not Relevant in this Crashworthiness Case

Evidence of the cause of the initial collision is not relevant in this crashworthiness case because a determination of the cause of the initial collision is not "of consequence in determining the action." Fed. R. Civ. P. 401. "Under the crashworthiness doctrine, liability is imposed not for defects that cause collisions but for defects that cause injuries after collisions occur." *Jimenez v. DaimlerChrysler Corp.*, 269 F.3d 439, 452 (4th Cir. 2001) (citing *Mickle v. Blackmon*, 252 S.C. 202, 230, 166 S.E.2d 173, 185 (1969) (recognizing the crashworthiness doctrine in South Carolina)). "Accordingly, evidence about the cause of the original accident is ***not relevant***." *Jimenez*, 269 F.3d at 452 (emphasis added).

In this action, Plaintiff seeks damages for the enhanced injuries caused by the second collision between Mr. Wickersham and the late-deployment of the airbag. The defective nature of the airbag system is the same regardless of the cause of the initial collision. "The fact that a negligent driver may be the initial cause of an accident does not abrogate the manufacturer's

3

duty to use reasonable care in designing an automobile to reduce the risk of secondary impact injuries." *Binakonsky v. Ford Motor Co.*, 133 F.3d 281, 288 (4th Cir. 1998) (internal quotation marks omitted). "Crashworthiness cases differ from traditional automotive product liability cases. Complaints in these cases do not allege that a defect in the vehicle caused the initial accident . . . . Instead, complaints in crashworthiness cases allege that a defective product or a defectively designed product caused or aggravated injuries after the initial accident." *Id.* at 284. Therefore, in a crashworthiness case, the cause of the initial collision is not "of consequence in determining the action" regarding whether a defective airbag system caused injuries after the initial accident. Fed. R. Civ. P. 401.

The Fourth Circuit addressed this issue in *Jimenez*, in which the estate of a deceased six-year-old brought a crashworthiness action against DaimlerChrysler when the child was thrown from a minivan after its liftgate opened as a result of an accident. 269 F.3d at 443. When the child's mother "drove through a red light[, the van] was struck in the left rear by an oncoming car." *Id.* at 443. DaimlerChrysler appealed from a jury verdict in the estate's favor arguing, among other things, the district court erred in excluding evidence of the mother's negligence in running the red light. *Id.* at 446. On appeal, the Fourth Circuit held "we cannot say that the district court erred in concluding that in light of the crashworthiness principle, the cause of the original accident was not relevant to proving a claim for enhanced injury." *Id.* at 453. The same result is warranted in this case. The cause of the initial collision is not relevant to proving or defending a claim for enhanced injury caused by the defective airbag system.

Further, the 2005 amendments to the South Carolina Contribution Among Tortfeasors Act (the "Act") demonstrate the Legislature intended comparative negligence remain inapplicable and irrelevant in a crashworthiness product liability case. It states in part:

4

> In an action to recover damages ***resulting from personal injury** . . . **resulting from tortious conduct, if <u>indivisible</u> damages*** are determined to be proximately caused by more than one defendant, joint and several liability does not apply to any defendant whose conduct is determined to be less than fifty percent of the total fault for the indivisible damages as compared with the total of: (i) the fault of all the defendants; and (ii) the fault (comparative negligence), if any, of plaintiff.

S.C. Code Ann. § 15-38-15(A) (Supp. 2014) (emphasis added). Damages in a crashworthiness product liability case are inherently divisible. The plaintiff may recover only those damages caused by the vehicle defect, not damages that resulted solely from the initial collision. The nature of a crashworthiness case eliminates the basis for using evidence about the initial collision to assert fault of the plaintiff in causing the initial collision because the crashworthiness doctrine prohibits a plaintiff from recovering against the manufacturer defendant for those damages caused solely by the initial collision and not by the defect in the vehicle.[2] Admitting evidence of the cause of the initial collision is contrary to the policy behind crashworthiness cases—to impose a duty on a manufacturer to minimize the injurious effects of a collision, regardless of how it is caused.

Evidence of the cause of the initial collision is not relevant to the issue of whether the airbag system is defective and caused Mr. Wickersham's enhanced injuries. Therefore, the Court should exclude the evidence from the trial of this case.

Plaintiff anticipates Ford may respond with reference to the unpublished District Court order in *Quinton v. Toyota Motor Corp.*, 2013 WL 2470083 (D.S.C. 2013), to argue that the *Jimenez* Court did not rule evidence of the cause of the initial collision is inadmissible in all

---

[2] *See Andrews v. Harley Davidson, Inc.*, 796 P.2d 1092, 1095 (Nev. 1990) ("A major policy behind holding manufacturers strictly liable for failing to produce crashworthy vehicles is to encourage them to do all they reasonably can do to design a vehicle which will protect a driver in an accident. Hence, the jury in such a case should focus on whether the manufacturer produced a defective product, not on the consumer's negligence." (reversing verdict for defendant where the trial court erred in admitting evidence of plaintiff's intoxication in crashworthiness case)).

5

crashworthiness cases. Plaintiff disagrees that *Quinton* holds such evidence is always admissible. The *Quinton* court's decision to admit such evidence is based largely on its assertion that the South Carolina Supreme Court's citation to one section of the Restatement (Third) of Torts in *Branham v. Ford Motor Co.*, 390 S.C. 203, 223-24, 701 S.E.2d 5, 16 (2010), indicates an approval of the entire Restatement (Third). This is incorrect. *Branham* did not abrogate the South Carolina General Assembly's express adoption of the comments to § 402A of the Restatement (Second) of Torts. S.C. Code Ann. § 15-73-30. Since *Branham* and *Quinton*, South Carolina State and Federal Courts have continued to cite the Restatement (Second) of Torts § 402A as controlling and instructive.[3] Therefore, the basis of the opinion in *Quinton* is incorrect and it should not be considered by this Court.

## II.     Evidence of the Cause of the Collision is Unfairly Prejudicial and Would Confuse and Mislead the Jury

Even if the Court finds the evidence relevant, it should still exclude it under Fed. R. Civ. P. 403. Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury . . . ." The probative value, if any, of evidence of the cause of the initial collision is minimal and is substantially outweighed by its danger of unfairly prejudicing Plaintiff, confusing the issues, and misleading the jury.

---

[3] *See Sparkman v. A.W. Chesterton Co.*, C/A No. 2:12-cv-02957-DCN, 2014 U.S. Dist. LEXIS 177560, 16 n.1 (Dec. 29, 2014) (citing § 402A for strict liability law and stating "The South Carolina legislature has adopted the comments to 402A as legislative intent"); *Miles v. DESA Heating LLC*, No. 4:10-00521-JMC; 2012 U.S. Dist. LEXIS 45433, *10-11 (D.S.C. Mar. 28, 2012) (citing to the comments in a discussion of warning defects); *Sauls v. Wyeth Pharms., Inc.*, 846 F. Supp. 2d 499 (D.S.C. 2012) (citing the comments and stating section 402A "was expressly incorporated into the legislative intent of the South Carolina Defective Products Act, S.C. Code Ann. § 15-73-10, and South Carolina courts consistently have relied upon it and its commentary in the development of products liability case law"); *Lawing v. Univar, USA, Inc.*, 415 S.C. 209, 211, 781 S.E.2d 548, 554 (2015) ("[T]he General Assembly expressly adopted the comments to section 402A of the Restatement of Torts (Second) . . . as the expression of legislative intent for that section.").

"An assessment of probative value under Rule 403 requires more than a determination that the evidence is 'relevant' to a material fact in the case. Rather, the trial court must assess the proponent's need for admission of the evidence in the full evidentiary context of the case." *Carnell Constr. Corp. v. Danville Redevelopment & Hous. Auth.*, 745 F.3d 703, 719 (4th Cir. 2014). The issue in this case is whether the airbag system in Plaintiff's Ford Escape is defective and, if so, whether such defect caused Mr. Wickersham's injuries in his collision with the airbag. Ford has no need for admission of evidence regarding the alleged cause of the initial collision in this case. The probative value is negligible considering that there is no actual proof of the cause of the accident. Rather, Mr. Wickersham does not remember what happened, and the investigating officer could say only that Mr. Wickersham drove too fast for conditions but acknowledge he did not know why the vehicle left the road.

"After evaluating the marginal probative value of the proposed evidence, the trial court then must balance the value of the evidence against the harmful consequences that may result from its admission." *Id.* at 719. "Foremost among those dangers is the risk of 'unfair prejudice,' which refers to an undue tendency of evidence to influence a jury to make a decision for reasons unrelated to the probative value of the evidence." *Id.* The harmful consequences Ford intends to cause by admitting such evidence is that the jury will blame Mr. Wickersham for the initial collision and, ultimately, for his injuries caused by the second collision with the airbag, and will conclude Mr. Wickersham intended to commit suicide. The evidence would unfairly prejudice Plaintiff because it has an undue tendency to influence the jury to make a decision in a crashworthiness case for reasons unrelated to the probative value, if any, of evidence of the cause of the initial collision.

Finally, the negligible probative value, if any, is substantially outweighed by a danger of confusing the issues and misleading the jury. The issue in this case is the second collision, not the initial collision. Introducing evidence of the cause of the initial collision will confuse the issues and mislead the jury into placing importance on what caused the initial collision. This will inflate the perceived importance of the cause of the initial collision and distract the jury from the central issues before it—whether the airbag system is defective and caused Mr. Wickersham's injuries in the second collision. *See Mickle*, 252 S.C. at 243, 166 S.E.2d at 192 ("The primary issue for the jury, on which Ford's liability turned, was whether the collision risk to which she was subjected by the design and composition of the gearshift lever assembly was unreasonable."). Therefore, the Court should exclude the evidence under Rule 403.

## CONCLUSION

For the reasons stated herein, the Court should exclude all evidence relating to the cause of the initial collision.

## CERTIFICATION

Pursuant to Local Rule 7.02, DSC, the undersigned counsel for Plaintiff certifies that he has attempted to confer with opposing counsel regarding the subject matter of this motion in an attempt to resolve this issue, but as of this filing the parties have been unable to reach an agreement on these issues.

>
> Don C. Gibson, Esq.
> Gibson Law Firm
> Dgibsonlaw2@aol.com
> 5422 Rivers Ave.
> North Charleston, SC 29406
> Phone: (843) 744-1887
> Fax: (843) 744-5320
>
> ~and~

                PETERS, MURDAUGH, PARKER, ELTZROTH
                          & DETRICK, P.A.

        By:  s/Ronnie L. Crosby
              Ronnie L. Crosby
              Fed ID #6311
              rcrosby@pmped.com
              Mark D. Ball
              Fed ID #5122
              mball@pmped.com
              Austin H. Crosby
              Fed ID #11536
              acrosby@pmped.com
              101 Mulberry Street East
              PO Box 457
              Hampton, SC 29924
              Phone: (803) 943-2111
              Fax: (803) 943-3943
              **ATTORNEYS FOR PLAINTIFF**

July   22  , 2016
Hampton, South Carolina