# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | | |
|---|---|---|
| Crystal L. Wickersham, | ) | **C/A NO. 9:13-cv-01192-DCN** |
| Plaintiff, | ) | |
| vs. | ) | |
| Ford Motor Company, | ) | |
| Defendant. | ) | |
| Crystal L. Wickersham, as Personal Representative of the Estate of John Harley Wickersham, Jr., | ) | **C/A NO. 9:14-cv-00459-DCN** |
| Plaintiff, | ) | |
| vs. | ) | |
| Ford Motor Company, | ) | |
| Defendant. | ) | |

**FORD MOTOR COMPANY'S MOTION *IN LIMINE* TO EXCLUDE INJURY CAUSATION OPINIONS BY MR. WICKERSHAM'S TREATING PHYSICIAN, JUDITH SKONER**

Defendant Ford Motor Company ("Ford"), pursuant to Federal Rule of Civil Procedure 26(a)(2), Federal Rules of Evidence 702 and 703 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny, moves to exclude injury causation opinions and testimony by John Wickersham's treating otolaryngologist, Judith Skoner, M.D. and states:

## INTRODUCTION

After the accident, Wickersham was treated by otolaryngologist, Dr. Judith Skoner. Based on her deposition testimony, Ford anticipates that Dr. Skoner will offer certain expert testimony, including causation opinions to the effect that the driver's frontal airbag, not the gear shifter knob, caused Wickersham's facial fractures. Such testimony is inadmissible and should be excluded because:

1. Plaintiff failed to disclose Dr. Skoner as an expert witness and provide a report or a summary of her opinions;

2. She is not qualified to opine on the cause of Wickersham's injuries;

3. Her causation opinions are not based on sufficient facts or data reasonably relied upon by experts in this field under FRE 702 and 703;

4. Her causation opinions are unreliable under FRE 702 and *Daubert*, 509 U.S. 579; and

5. Any testimony concerning injury causation would be cumulative.

## STATEMENT OF FACTS

These product liability actions arise from a single-vehicle accident that occurred on February 3, 2011, in Beaufort County, South Carolina. Wickersham was driving a 2010 Ford Escape when he failed to properly negotiate a left turn and proceeded through a "T" intersection into a tree. Wickersham sustained various facial injuries in the crash, ultimately leading to the loss of his left eye. Wickersham, who had a long history of mental illness before the accident, committed suicide on July 21, 2012. Plaintiff initially filed a loss of consortium action for her damages stemming from her husband's injuries. She later filed wrongful death and survival actions on behalf of her late husband's estate. The cases have essentially been consolidated.

Plaintiff alleges the subject vehicle's airbag was defective and caused Wickersham's facial injuries.

Dr. Skoner is a board-certified otolaryngologist. (Skoner Dep. at 6, attached as Ex. A) Otolaryngology comprises the pathology of the head and neck, excluding the (eye) globes, brain, and spine. (*Id*. at 6-7)  She focuses primarily on facial plastic surgery and reconstruction. (*Id*. at 7-8)

The day after the accident, Dr. Skoner evaluated Wickersham while he was hospitalized at The Medical University of South Carolina. (Skoner Dep. at 9)  Wickersham sustained a rupture of his left globe as well as multiple facial and nasal fractures. (*Id*. at 15-23)  Dr. Skoner performed a series of surgeries on Wickersham and continued to follow him until December 2011. (*Id*. at 27-31, 45)

On May 21, 2015, Plaintiff's counsel deposed Dr. Skoner.  Dr. Skoner testified that she has treated people with airbag injuries in the past, but "[h]onestly, I don't really get into the mechanism of injury in detail at all with people, because it doesn't really matter to me." (Skoner Dep. at 53)  Nonetheless, Plaintiff's counsel elicited opinions from Dr. Skoner regarding the cause of Wickersham's facial and globe fractures:

- "I can't say with any certainty or anything, but I can say that all of his fractures were essentially located bilaterally in the midface, which is a classic location or consistent with airbag injuries." (*Id*. at 50-51)

- "In my experience and in literature, midface orbital trauma has been associated with airbag injuries, especially in bilateral." (*Id*. at 51)

- "In my experience, fractures such as his with the bilaterality would typically not be caused from a unilateral source…[l]ike from one particular direction affecting" the opposite side of the face. (*Id*. at 52)

- It is more likely than not that Wickersham's mid-face injuries were caused by the airbag. (*Id*. at 70-71)

3

- Mr. Wickersham's facial injuries could not have been caused by a single strike the gear shifter knob in vehicle because I "can't even imagine how that would occur." (*Id*. at 69-70)

On cross-examination, Dr. Skoner agreed that she lacks the qualifications to investigate mechanism of injury in motor vehicle accidents. (Skoner Dep. at 66)  She opined that Wickersham's facial injuries were "more likely than not" caused by the airbag because Mr. Wickersham was "lucid" after the accident and told her what happened. (*Id*. at 62, 66)

More specifically, Dr. Skoner testified:

- Of the patients she has treated for alleged airbag injuries, she does not recall whether there were any "typical" bruises, abrasions or patterns on a patient's face. (*Id*. at 55-56)

- She did not analyze Wickersham's rib fractures as that would be outside her expertise. (*Id*. at 57)

- She does not know and did not attempt to determine the directionality of the forces that caused Wickersham's facial fractures. (*Id*. at 58)

- She does not know if Wickersham's facial fractures were caused by one impact or multiple impacts as that would be outside her expertise. (*Id*. at 59-60)

- She knows no details about the accident other than what Wickersham told her. (*Id*. at 62)

- She has not seen the vehicle involved in the accident. (*Id*. at 62-63)

- She has not analyzed other potential mechanisms inside the vehicle that could have caused Wickersham's injuries. (*Id*. at 63-64)

- She does not know and has not researched the amount of force required to cause Wickersham's facial injuries. (*Id*. at 64)

- She has never researched airbag injuries, but it has come up at journal clubs and meetings. (*Id*. at 65-66)

- She is a surgeon; she does not inspect vehicles to rule out other potential injury sources; she "leave[s] that investigation up to those experts." (*Id*. at 66)

- She does not have any experience investigating mechanism of injuries in car accidents. (*Id*. at 71)

4

**MEMORANDUM OF LAW**

I. **THE COURT SHOULD PRECLUDE DR. SKONER FROM OFFERING OPINIONS AS TO INJURY CAUSATION AT TRIAL FOR FAILURE TO COMPLY WITH RULE 26**

All testifying experts must be timely disclosed. Fed. R. Civ. P. 26(a)(2)(A). The expert must provide a written report if she is "one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B).

Even if the witness is not required to provide a written report, the party's disclosure must provide the subject matter of the witness' testimony and a "summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). The 2010 Advisory Committee Notes on Rule 26 explain that subdivision (a)(2)(C) was added to "mandate" summary disclosures of those experts who are not required to provide reports under subdivision (a)(2)(B). "Frequent examples include physicians or other health care professionals and employees of a party who do not regularly provide expert testimony." *Id.*

After the 2010 Amendments, courts have continued to "adhere to traditional tests for determining when a treating physician is considered a full-blown expert and when she is considered to be more akin to a percipient witness with professional expertise." *Kobe v. Haley*, No. CA 3:11-1146-TMC, 2013 WL 4067921, at *3 (D.S.C. Aug. 12, 2013), (quoting, *Kondragunta v. Ace Doran Hauling & Rigging Co.,* No. 1:11–cv–01094–JEC, 2013 WL 1189493, at *10 (N.D. Ga. Mar. 21, 2013)).

> [I]f a physician's opinion regarding causation or any other matter was formed and based on observations made during the course of treatment, then no Subsection B report is required, albeit the Subsection C report discussed above will be required. *If, however, the physician's opinion was based on facts gathered outside the course of treatment, or if the physician's testimony will involve the use of hypotheticals, then a full subsection B report will be required.*

5

*Kobe*, 2013 WL 4067921, at *3 (emphasis added). Therefore, if a treating physician bases opinions solely on information gathered during the course and treatment, the plaintiff must provide a summary of the physician's testimony under subsection (C), but if the opinion is based on facts gathered outside of the course of treatment, then a full Rule 26 (a) (2) (B) report is required.

In this regard, courts have recognized the "unfairness of permitting a party to employ a physician who treated an injured party to provide testimony beyond simply the care of the plaintiff to classic expert opinion regarding causation and prognosis." *Kobe*, 2013 WL 4067921 at *3 (citing *Thomas v. Consolidated Rail Corp.,* 169 F.R.D. 1, 2 (D.Mass. 1996)). *See also*, *Ingram v. ABC Supply Co.,* No. C/A 3:08-1748-JFA, 2010 WL 233859, at *2 (D.S.C. Jan. 14, 2010) (excluding treating physicians from offering opinions on a patient's diagnosis, prognosis and future medical care because they were not disclosed under pre-2010 version of Rule 26). "To the extent the treating physician testifies only as to care and treatment of his/her patient, the physician is not considered a specially retained expert [for whom Rule 26(a)(2)(B) disclosures are required]." *Id*. (quoting *Brown v. Best Foods,* 169 F.R.D. 385, 388 (N.D. Ala. 1996)).

Applied here, by Dr. Skoner's own admission, any opinions regarding injury causation, *i.e.,* that Wickersham's facial fractures were caused by airbag and – hypothetically – not by contact with the gear shifter knob fall beyond her care and treatment of Wickersham. Accordingly, they would clearly constitute expert opinions which were required to be disclosed pursuant to Rule 26(a)(2)(B).[1]

---

[1] Moreover, even if Plaintiffs were not required to provide a Report under subsection B, there is no question they were required to provide a summary of her opinions under subdivision subsection (C). *Kobe*, 2013 WL 4067921, at *3; *Kondragunta*, 2013 WL 1189493 at *6.

6

II.  **EVEN IF PROPERLY DISCLOSED, DR. SKONER'S OPINION TESTIMONY IS INADMISSIBLE**

   A.  <u>**Legal Standard For Admissibility Of Expert Opinion Testimony**</u>

Under Federal Rule of Evidence 702, the court must first determine whether the proffered expert is qualified to offer an opinion. Thereafter, the court must determine whether the proffered opinions satisfy the following three requirements: (1) an expert opinion must be "based upon sufficient facts or data," (2) the expert must employ a reliable scientific methodology, and (3) the expert must apply the relevant principles and methods reliably to the facts of the case. In their *Daubert*-mandated role as gatekeepers, trial courts cannot rely on vigorous cross-examination to sort out issues concerning the reliability and relevance of an expert's analysis and opinions. Instead, trial courts' scrutiny of the reliability and relevance of proposed expert testimony must be done before the expert ever takes the witness stand.

"A reliable expert opinion must be based on scientific, technical or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 200 (4th Cir. 2001), (quoting *Oglesby v. General Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)). Experts must provide more than mere speculation and assumptions as the basis for their opinions. *Tyger Constr. Co. Inc. v. Pensacola Constr. Co.,* 29 F.3d 137, 142 (4th Cir. 1994) ("An expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record). Thus, under the gate-keeping function, trial courts are "expected to reject 'any subjective belief or speculation.'" *Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 816 (7th Cir. 2004). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997). Plainly stated,

7

the gate-keeping function "requires more than simply 'taking the expert's word for it.' The more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable." Fed R. Evid. 702 advisory committee's note (2000 amends). (citations and quotations omitted)

Even if a witness satisfies the FRE 702 threshold by being qualified and capable of rendering reliable opinions, pursuant to FRE 703, an expert's opinion must be founded on data which are "reasonably relied upon by experts in a particular field in forming opinions or inferences upon the subject."

### B.     Dr. Skoner Is Not Qualified To Opine On Mechanism Of Injury

Treating physicians are no different than any other expert: before proffering expert testimony they must withstand *Daubert* scrutiny, particularly when they offer testimony regarding causation. *Higgins v. Koch Development Corp.*, 794 F.3d 697, 704-5 (7th Cir. 2015). When the testimony of a treating physician goes beyond an account of their experience and care of a patient to provide explanations of a scientific and technical nature, the court must insure the testimony satisfies Rule 702 admissibility standard. *Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1316-17 (11th Cir. 2011). *See also Higgins,* 794 F.3d at 705-06, (finding that a pulmonologist was not qualified to opine on the cause of plaintiff's reactive airways dysfunction syndrome); *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671 (6th Cir. 2010) ("An expert may be a distinguished doctor, and his conjecture about causation may be worthy of careful attention … but the courtroom is not the place for scientific guesswork, even of the inspired sort.").

While Dr. Skoner may be qualified as an otolaryngologist to offer certain medical opinions regarding diagnosis and treatment, she lacks important qualifications in other fields that would allow her *to take the additional step* of opining on the mechanism of injury in court. *See, e.g., Avendt v. Covidien, Inc.*, No. 11-cv-15538, *12 (E.D. Mich. Apr. 19, 2016), (quoting

8

*Kumho*, 526 U.S. at 152) ("An expert may be qualified by personal knowledge and experience, but such 'experience-based' testimony must be the product of the 'the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'").

Dr. Skoner has no training or experience in injury causation as it relates to motor vehicles, their components, or with respect to airbags specifically. (Skoner Dep. at 66, 71). While she has treated patients who have reportedly suffered an injury because of an airbag, her background on this subject matter is minimal. She does not "get into the mechanism of injury" with all of her patients, because "it doesn't really matter" to her. (*Id*. at 53) She has never personally researched airbag injury causation, although the subject has come up "in journal clubs and at meetings." (*Id*. at 65) She does not conduct vehicle inspections to determine the specific cause of an injury – she leaves that investigation to qualified experts. (*Id*. at 66)

Because she has no background in biomechanics, occupant kinematics, human tolerances, injury causation, accident reconstruction, vehicle dynamics, physics, or engineering, she was not in a position to correlate Wickersham's injuries with the specific circumstances and characteristics of this accident such as speed, velocity, body position, kinematics, energy, timing, magnitude and principal direction of force, among others. Dr. Skoner agrees that she lacks the qualifications to conduct such an analysis and that it should be left to a qualified expert. (Skoner Dep. at 66)

Accordingly, on this basis alone, the Court should preclude her from testifying regarding the cause of Wickersham's injuries or offer generalized opinions regarding airbag-induced injuries.

### C. Dr. Skoner's Causation Opinions Are Not Based On Sufficient Facts Or Data That Are Reasonably Relied Upon By Experts In This Field

Even if the Court finds that Dr. Skoner is qualified to render injury causation opinions, the Court should exclude the opinions because they are not based on sufficient facts or data (FRE 702) that are "reasonably relied upon by experts in the particular field." FRE 703.

Dr. Skoner concluded the airbag caused Wickersham's facial injuries based on Wickersham's account. She testified:

> Q   And so without having done any of that investigation and with that being outside of your scope and treatment for Mr. Wickersham, is it fair that the most you can say is that the injuries he sustained is consistent with the airbag; is that right?
>
> [objection]
>
> A   As someone who treats a lot of facial trauma and who reads the literature on it, it would be, just in my opinion, based on my experience and what I read that it would certainly be consistent with an airbag. *And since the patient was lucid and told me what happened, I would say it probably was the airbag. Again, that's my medical opinion.*

(Skoner Dep. at 66-67) (emphasis added)

Dr. Skoner considered no other relevant facts or data. She did not consider the fact Wickersham sustained rib fractures. (Skoner Dep. at 57) She did not consider the amount or direction of force or whether his fractures were caused by a single or multiple impacts. (*Id*. at 58-60) She did not inspect the vehicle or attempt to rule out other potential injury mechanisms. (*Id*. at 62-64) The only information she had regarding the accident was what Wickersham told her. (*Id*. at 62-63)

The use of the patient's account to offer a causation opinion fundamentally violates FRE 702 and 703. *See, e.g.*, *Perkins v. U.S.*, 626 F.Supp. 2d 587, 592-93 (E.D. Va. 2009) (finding that a treating physician's causation opinion was unreliable because the physician adopted a patient's "self-reported" theory of causation – the physician's opinion was not based on the same

10

level of "intellectual rigor" as an expert in the relevant field).  Therefore, even if the Court concludes Dr. Skoner was properly disclosed and is qualified to render injury causation opinions, her opinions in this case are not based on sufficient facts or data and must be excluded for this reason.

### D.     Dr. Skoner's Causation Opinions Are Not Reliable

Dr. Skoner's causation opinions are also inadmissible because they are not reliable. To assess reliability, a court should consider: (1) whether the particular theory can and has been tested, (2) whether the theory has been subjected to peer-review, (3) rates of error, (4) standards controlling the technique's operation, and (5) whether the technique has achieved general acceptance in the relevant community.  *U.S. v. Crisp*, 324 F.3d 261, 266 (4th Cir. 2003).

Here, Dr. Skoner's "methodology" consists of (1) examining and diagnosing Wickersham's facial injuries, (2) relying on Wickersham's description of the accident, and (3) using her general awareness that airbags may cause "bilateral" facial injuries. (Skoner Dep. at 66-67)  Dr. Skoner did not conduct any independent investigation whatsoever to link Wickersham's injuries to the airbag.  She has not done any testing and has no knowledge of the specifics of the accident, such as speed, force, or velocity.  She has no knowledge of Wickersham's movement in the vehicle during this accident.  She did not inspect the subject vehicle to look for any witness marks nor did she conduct any surrogate work with an exemplar vehicle.

No qualified expert offering injury causation opinions would rely solely or even largely on the account of the driver in reaching a conclusion that a specific component within the vehicle proximately caused a particular injury.  This simplistic "methodology" has never been subjected to peer review or published, has no known potential error rate, and is not the generally-accepted method to determine the mechanism of injury in motor vehicle accidents.  *See, e.g., Wilson v.*

11

*Taser Intern., Inc.*, No. 08-13810, 303 Fed. App'x. 708, 714 (11th Cir. Dec. 16, 2008) (excluding causation opinion of treating physician because he failed to demonstrate that his opinion that TASER exposure may cause compression fractures is testable, he did not offer any error rate for his opinion, he did not show any evidence that his opinion has been peer reviewed and did not show the general acceptance of his opinion).

The district court's analysis is *Bowers v. Norfolk Southern Corp.*, 537 F.Supp. 2d 1343, 1363 (M.D. Ga. 2007) is instructive.  There, the plaintiff sought to have his treating orthopedist opine that his lower back symptoms were caused by vibrations sustained on a particular trip while working as a railroad engineer.  *Id*. at 1364.  In finding that the orthopedist's causation opinions were unreliable, the court made detailed observations regarding four of the five factors outlined in the Rule 702 advisory committee notes.  *Id*. at 1363-1366.  The factors included:

(1)    Whether the expert proposes to testify about matters growing naturally and directly out of research they have conducted independent of litigation, or whether they have developed their opinions expressly for the purposes of testifying.  *Id*. at 1364.  The *Bowers* Court concluded the expert did not form his opinions independent of the litigation; the specific cause of the plaintiff's injuries "made little difference" to the doctor because he would have prescribed the same course of treatment.  *Id*.  Therefore, the expert's causation opinions failed the first test. *Id*.

(2)    Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion.  *Id.* at 1365. The *Bowers* Court found the doctor's premise that "vibration can cause injury" vague and imprecise.  "The expert could offer no quantification, no parameters, no percentages, and no numbers."  *Id*.  Therefore, the expert's opinion failed the second test. *Id*.

(3)     Whether the expert has adequately accounted for obvious alternative explanations. *Id*. The *Bowers* Court found that the expert's opinion failed this test because he lacked important information about the plaintiff's medical history and did not consider or attempt to analyze the relevance of this information in determining causation. *Id*.

(4)     Whether the expert is as careful as he would be in his regular professional work outside his litigation consulting. *Id*. The *Bowers* Court concluded the expert was not because he largely adopted the plaintiff's explanation of causation as his own causation opinions. *Id*. at 1365-66. The court pointed out, that while a physician may rely on a patient's history in formulating their opinion in some instances, this is not feasible in a case that "involves a complicated causation issue that is not readily resolved by quick reference to the manner in which the injury occurred and the type of injury sustained." *Id*.

The same analysis applies here to preclude Dr. Skoner's causation opinions. First, Dr. Skoner is a surgeon, not an injury causation or airbag expert. She formed her causation opinions for this litigation. The specific mechanism of injury was not important to her treatment of Wickersham. (Skoner Dep. at 53) Second, Dr. Skoner's causation opinion: "airbags cause bilateral facial injuries" is vague and imprecise. Her opinion is unquantifiable. And she has no knowledge of the magnitude or direction of forces that caused Wickersham's injuries. (*Id*. at 58, 64) Third, Dr. Skoner made no attempt to investigate other potential causes of Wickersham's injuries and lacks specific information about the motor vehicle accident that are important in correlating Wickersham's injuries to a specific component. Fourth, Dr. Skoner relied largely, if not completely, on Wickersham's account of the accident. In the course of her medical practice, she would never diagnose a patient based only on a patient's narrative without further evaluation or testing to independently confirm a patient's self-reported diagnosis.

Dr. Skoner's injury causation opinions are pure speculation, not based on any reliable methodology, and were formed in the abstract without regard to any details of this accident. Accordingly, FRE 702 and *Daubert* require the Court exclude Dr. Skoner's causation opinions.

### E.     Any Opinions By Dr. Skoner As to Injury Causation Would be Cumulative

Plaintiff's retained expert Kelly Kennett will testify the airbag caused Wickersham's injuries. Therefore, Dr. Skoner's injury causation opinions are also cumulative and should be excluded for this reason. Fed. R. Evid. 403, 611. *See, e.g., Bay Country Consumer Fin., Inc. v. Fid. Sec. Life Ins. Co.*, 311 F. App'x 580, 581 (4th Cir. 2008) (expert witness' opinion as to cause of death was cumulative where other experts offered the same opinion).

### CONCLUSION

For the foregoing reasons, Ford respectfully requests the Court to enter an Order limiting precluding Dr. Skoner from offering opinions related to injury causation and/or mechanism of injury in this accident or to airbags generally.

### Local Rule 7.02 Affirmation

The undersigned counsel for Defendant Ford Motor Company would show that, prior to filing of the instant motion, they communicated with opposing counsel in a good faith effort to resolve the matter contained herein.

(Signature page to follow.)

                TURNER, PADGET, GRAHAM & LANEY, P.A.

July 22, 2016        By: <u>s/ Carmelo B. Sammataro</u>
                J. Kenneth Carter, Jr. (Fed. I.D. No. 5108)
                Nicholas W. Gladd (Fed. I.D. No. 8085)
                Carmelo B. Sammataro (Fed. I.D. No. 9174)
                Post Office Box 1473
                Columbia, SC 29202
                KCarter@TurnerPadget.com
                NGladd@TurnerPadget.com
                SSammataro@TurnerPadget.com
                Phone: (803) 254-2200
                Fax: (803) 799-3957

                **ATTORNEYS FOR DEFENDANT**