# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | |
|---|---|
| CRYSTAL L. WICKERSHAM,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>FORD MOTOR COMPANY,<br><br>　　　　Defendant.<br>_____<br><br>CRYSTAL L. WICKERSHAM, *as personal representative of the estate of John Harley Wickersham, Jr.*<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>FORD MOTOR COMPANY,<br><br>　　　　Defendant.<br>_____ | No. 9:13-cv-01192-DCN<br><br><br><br><br><br><br><br><br><br><br>No. 9:14-cv-00459-DCN<br><br>**ORDER** |

The following matter is before the court on defendant Ford Motor Company's ("Ford") motion for judgment as a matter of law, ECF No. 166.[1] For the reasons set forth below, the court denies the motion.

## I.  BACKGROUND

Decedent John Harley Wickersham, Jr. ("Wickersham") was a pharmacist with a history of depression, bipolar disorder, and suicidal thoughts. On February 3, 2011, during a rainstorm, Wickersham drove his 2010 Ford Escape (the "Escape") through a T-intersection going roughly forty-two miles per hour, hit a ten-inch curb, went airborne, hit

---

[1] All ECF Nos. refer to Case No. 9:13-cv-01192-DCN.

1

the ground, and crashed into a tree forty-five feet from the road. Wickersham suffered significant facial injuries—which required multiple surgeries, including one to remove his left eye—and the loss of his ability to smell or chew food.

After his accident, Wickersham had difficulty controlling his pain, despite many visits to pain specialists, surgeons, and doctors. He also continued to suffer from depression and was voluntarily hospitalized for severe depression and suicidal thoughts on April 6, 2012. On June 6, 2012, Wickersham began receiving nerve treatments at an Emory University pain clinic. When his Consolidated Omnibus Budget Reconciliation Act insurance expired, Wickersham became concerned he would be unable to afford the out-of-pocket costs of treatment. Because he could not be on pain medication while working as a pharmacist, Wickersham struggled to maintain employment after his accident, causing his family a great deal of financial hardship. On July 21, 2012—almost a year and a half after his accident—Wickersham died by suicide after consuming a lethal dose of methadone.

Wickersham's widow, Crystal Wickersham ("plaintiff"), filed two separate actions against Ford—one in her individual capacity and one as personal representative of Wickersham's estate. In the action brought in her individual capacity, plaintiff alleged a loss of consortium cause of action. In the action brought in her capacity as personal representative of Wickersham's estate, plaintiff alleged wrongful death and survivorship causes of action. Both actions additionally alleged three products-liability claims based on negligence, strict liability, and breach of express warranty and the implied warranty of merchantability. The claims asserted that the airbag system in Wickersham's Escape was defective, relying upon the crashworthiness doctrine. That doctrine permits recovery for

enhanced injuries caused by a car company's failure to design cars that account for the risks inherent to car crashes. See Donze v. Gen. Motors, LLC, 800 S.E.2d 479, 480–81 (S.C. 2017).

At trial, Wickersham asserted that the defective airbag caused his severe facial injuries, and that if the airbag had either not deployed in this crash or not deployed so late, he would not have suffered these injuries. Ford argued that Wickersham was out of position when the airbag deployed, and his injuries were caused when his face impacted the gearshift lever. On August 26, 2016, the jury found in plaintiff's favor as to all claims and awarded $4.65 million in damages. Specifically, the jury awarded (1) $1,250,000 to Wickersham's estate for Wickersham's pain and suffering between the time of the accident and the time of his death; (2) $650,000 to plaintiff, in her individual capacity, for loss of consortium during the same time period; (3) $1,375,000 to Wickersham's beneficiaries for his wrongful death; and (4) $1,375,000 to plaintiff, in her individual capacity, for her loss of consortium following Wickersham's wrongful death. In total, the jury awarded $2.75 million in damages in connection with plaintiff's wrongful death claims and $1.9 million in damages in connection with plaintiff's survival claims. The jury also found Wickersham was thirty percent at fault for his injuries but was instructed by the court not to reduce damages on this basis.

Ford appealed the judgments to the Fourth Circuit. As relevant here, Ford argued that this court had misapprehended South Carolina law on proximate cause in wrongful death cases involving death by suicide. This court determined that plaintiff could prevail on the wrongful death claims if she proved that Ford's actions led Wickersham to take his life due to an "uncontrollable impulse"—an exception to the general rule that suicide

breaks the causal chain in wrongful death claims. Essentially, this court held that Wickersham could prevail if the injuries sustained in the accident as a result of the defective airbag caused chronic pain that led to an uncontrollable impulse to commit suicide. Ford believed this interpretation of South Carolina law to be legal error that caused this court to both improperly deny its motion for judgment as a matter of law and improperly instruct the jury. Ford additionally sought a new trial as to the remaining claims based on the prejudicial effect of evidence concerning Wickersham's death. The Fourth Circuit certified a question to the South Carolina Supreme Court on this issue:

> Does South Carolina recognize an "uncontrollable impulse" exception to the general rule that suicide breaks the causal chain for wrongful death claims? If so, what is the plaintiff required to prove is foreseeable to satisfy causation under this exception—any injury, the uncontrollable impulse, or the suicide?

Wickersham v. Ford Motor Co., 738 F. App'x 127, 129 (4th Cir. 2018) ("Wickersham I").

After the South Carolina Supreme Court answered the certified question, the case returned to the Fourth Circuit. The appellate court summarized the South Carolina Supreme Court's decision as follows:

> [T]here is no presumption in South Carolina that a death by suicide is unforeseeable as a matter of law. Accord [Scott v. Greenville Pharmacy, 48 S.E.2d 324, 328 (S.C. 1948)] ("Each case must be decided largely on the special facts belonging to it."). But "[i]n cases involving wrongful death from suicide, [South Carolina] courts have consistently decided legal cause as a matter of law." [Wickersham v. Ford Motor Co., 853 S.E.2d 329, 332 (S.C. 2020) ("Wickersham II")]. Accordingly, the district court must first decide whether Wickersham's suicide was "unforeseeable as a matter of law." Id. at 333. If not, "the jury must consider foreseeability" as well as causation-in-fact. Id.

Wickersham v. Ford Motor Co., 997 F.3d 526, 534 (4th Cir. 2021) ("Wickersham III").

In other words, the Fourth Circuit instructed that "not only does South Carolina law not

4

recognize an 'uncontrollable impulse' exception to the general rule, but also it does not apply the general rule that death by suicide precludes foreseeability as a matter of law." Id. at 533. Instead, the South Carolina Supreme Court interpreted its past precedent to apply the state's traditional proximate cause requirements to wrongful death actions involving death by suicide. Moreover, the Fourth Circuit noted that the South Carolina Supreme Court announced one key difference from South Carolina's usual foreseeability analysis. Typically, "the plaintiff need not prove that the defendant should have contemplated <u>the particular event</u> which occurred. But, in cases involving wrongful death by suicide, the death by suicide must be specifically foreseeable." Id. at 533–34 (internal citations omitted) (emphasis in original).

With the legal framework defined, the Fourth Circuit turned to its application in this case. First, it found that this court's analysis in denying Ford's Rule 50(b) motion as to plaintiff's wrongful-death action "differ[ed] in crucial respects from the proximate-cause framework that the Supreme Court of South Carolina announced." Id. at 534. Specifically, the Fourth Circuit found that this court had not applied the correct proximate cause framework of causation-in-fact and foreseeability. Id. "[A]lthough the court stated that it would consider whether Ford's conduct proximately caused Wickersham's <u>uncontrollable impulse [to commit suicide]</u>, South Carolina law requires an analysis of whether Ford's conduct proximately caused Wickersham's <u>death by suicide</u>." Id. (emphasis in original). The Fourth Circuit thus concluded that "[b]ecause the court rejected traditional proximate-cause principles and does not appear to have explicitly analyzed the foreseeability of Wickersham's death by suicide, [the Fourth Circuit] cannot be certain that the district court's analysis comports with South Carolina law." Id. at 535.

The Fourth Circuit therefore "remand[ed] for the district court—familiar as it is with the facts and record—to reconsider its Rule 50(b) motion under the proper legal framework." Id. at 535.

Second, the Fourth Circuit considered whether this court abused its discretion in denying Ford's motion for a new trial under Federal Rule of Civil Procedure 59(a). The Fourth Circuit agreed with Ford that the erroneous jury instructions required a new trial on the wrongful death claims because the instructions permitted the jury to find Ford liable without determining the foreseeability of Wickersham's death by suicide. Id. at 535–538. Because "the instruction allowed the jury to find for Wickersham without considering the most crucial and difficult-to-establish component of proximate cause," the improper instruction seriously prejudiced Ford, requiring vacatur of the wrongful-death judgments. Id. at 538. The Fourth Circuit accordingly instructed that "[i]f the district court does not decide Wickersham's wrongful death action as a matter of law under Rule 50(b), it must conduct a new trial on this claim." Id.

Additionally, by way of footnote, the Fourth Circuit acknowledged Ford's argument on appeal that if the wrongful death claims should not have been submitted to the jury, then evidence of Wickersham's death by suicide would be inadmissible in relation to plaintiff's remaining survival claims and it would be entitled to a new trial on those claims. Id. at 538 n.7. However, because the Fourth Circuit remanded to this court to reconsider Ford's Rule 50(b) motion as to the wrongful death claims, it did not reach

this argument in its decision. Instead, the Fourth Circuit affirmed the judgment on the survival causes of action.[2]

In sum, the Fourth Circuit vacated judgment on plaintiff's wrongful death claims and remanded to this court to reconsider Ford's Rule 50(b) motion for judgment as a matter of law. The Fourth Circuit instructed that, if the court does not decide the wrongful death claims as a matter of law based on the motion, the court must conduct a new trial on those claims. If the court decides Wickersham's wrongful death claims in Ford's favor as a matter of law on the Rule 50(b) motion, the Fourth Circuit did not discuss whether Ford is entitled to a new trial on the survival claims, and the court must consider whether that argument is available on remand.

Following the Fourth Circuit's ruling and remand to this court, Ford filed a motion for judgment of a matter of law, for a new trial, and to alter the judgment on December 27, 2021. ECF No. 166. On February 8, 2022, plaintiff responded in opposition, ECF No. 167, and on March 23, 2022, Ford replied, ECF No. 169. The court held a hearing on the motion on April 21, 2022. ECF No. 173. As such, the motion has been fully briefed and is now ripe for review.

## II. STANDARD

Federal Rule of Civil Procedure 50(b) provides that "[i]f the court does not grant a motion for judgment as a matter of law made under Rule 50(a) [before the case is submitted to the jury], the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed. R.

---

[2] The court acknowledges Ford's dispute on this point and discusses the same below in its analysis of Ford's request for a new trial on the survival claims.

Civ. P. 50(b). A trial court should award judgment as a matter of law to a movant pursuant to Fed. R. Civ. P. 50(b) "if a reasonable jury could only reach one conclusion based on the evidence or if the verdict in favor of the non-moving party would necessarily be based upon speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005); see also Persinger v. Norfolk & W. Ry. Co., 920 F.2d 1185, 1189 (4th Cir. 1990) (finding that the court should grant judgment as a matter of law only if "the evidence is so clear that reasonable men could reach no other conclusion than the one suggested by the moving party"). A movant is entitled to judgment as a matter of law "if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof." Price v. City of Charlotte, 93 F.3d 1241, 1249 (4th Cir. 1996); see Wheatley v. Wicomico Cnty., 390 F.3d 328, 332 (4th Cir. 2004) (determining a motion for judgment as a matter of law should be granted following a jury's verdict "if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof").

Judgment as a matter of law is appropriate when the evidence can support only one reasonable conclusion. See Chaudhry v. Gallerizzo, 174 F.3d 394, 405 (4th Cir. 1999). "[T]he evidence and all reasonable inferences from it are assessed in the light most favorable to the non-moving party, and the credibility of all evidence favoring the non-moving party is assumed." Crinkley v. Holiday Inns, Inc., 844 F.2d 156, 160 (4th Cir. 1988); see also Konkel v. Bob Evans Farms, Inc., 165 F.3d 275, 279 (4th Cir. 1999) (finding that a Rule 50 motion should be granted "if a district court determines, without weighing the evidence or considering the credibility of the witnesses, that substantial

evidence does not support the jury's findings"). If there is any evidence on which a reasonable jury could return a verdict in favor of the nonmoving party, judgment as a matter of law should not be granted. Price, 93 F.3d at 1249. "If reasonable minds could differ, [the court] must affirm the jury's verdict." Pitrolo v. Cnty. of Buncombe, 407 F. App'x 657, 659 (4th Cir. 2011) (citing Dennis v. Columbia Colleton Med. Ctr., 290 F.3d 639, 645 (4th Cir. 2002)).

Alternatively, a motion for a new trial under Federal Rule of Civil Procedure 59(a) may be granted "on all or some of the issues . . . to any party . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). This rule allows a trial court to set aside the verdict and order a new trial only if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice even though there may be substantial evidence which would prevent the direction of a verdict." Atlas Food Sys. & Servs. Inc. v. Crane Nat'l Vendors, Inc., 99 F.3d 587, 594 (4th Cir. 1996). "[A] Rule 59(a) motion for new trial is a matter "resting in the sound discretion of the trial judge." Eberhardt v. Integrated Design & Constr., Inc., 167 F.3d 861, 869 (4th Cir. 1999).

### III.   DISCUSSION

On remand, the court must consider Ford's Rule 50(b) motion for judgment as a matter of law on plaintiff's wrongful death claims in light of the South Carolina Supreme Court's recent clarification on the proximate cause legal framework. If the court grants Ford's motion, the court must resolve a secondary issue—whether Ford is entitled to a new trial on the survival claims. Essentially, if it reaches the latter inquiry, the court

must determine whether Ford's request for a new trial on the survival claims is properly before the court on remand, and, if so, whether evidence of Wickersham's suicide was irrelevant and unduly prejudicial as to plaintiff's claims for Wickersham's pre-death injuries. If the court denies Ford's motion, it must conduct a new trial on plaintiff's wrongful death claims. Because the court finds that Ford is not entitled to judgment as a matter of law on the wrongful death claims, the court denies Ford's motion, does not reach the second issue, and orders a new trial on plaintiff's wrongful death claims.

### A. Motion for Judgment as a Matter of Law

Ford argues that it is entitled to judgment as a matter of law on plaintiff's wrongful death claims because plaintiff cannot prove proximate cause to hold Ford liable for Wickersham's death. Specifically, Ford argues that plaintiff cannot establish that Ford's conduct related to the defective airbag was a proximate cause of plaintiff and Wickersham's injuries because Wickersham's suicide was unforeseeable to Ford as a matter of law.

"In actions for wrongful death, as in the case of actions for personal injuries generally, it is essential to a recovery of damages that the wrongful act or default of the defendant shall have been the proximate cause of the death resulting therefrom." Scott, 48 S.E.2d at 326. Proximate cause requires proof of cause-in-fact and legal cause. Baggerly v. CSX Transp., Inc., 635 S.E.2d 97, 101 (S.C. 2006).[3] In causation, as in other

---

[3] There is no dispute that plaintiff has presented sufficient evidence for the jury to decide cause-in-fact. Indeed, plaintiff's expert reviewed Wickersham's mental and psychiatric history following the accident and concluded that "[Wickersham's] suicide was a result of chronic pain and depression, . . . and that the pain . . . that led to his suicide was directly a product of his car accident." ECF No. 153 at 11 (citing T. at 773:22–774:1). This alone is sufficient to support a jury determination that the defective airbag was a cause-in-fact of Wickersham's suicide.

10

contexts, "proximate" is the opposite of "remote." See Stone v. Bethea, 161 S.E.2d 171, 173 (S.C. 1968) ("When the [conduct] appears merely to have brought about a condition of affairs, or a situation in which another and entirely independent and efficient agency intervenes to cause the injury, the latter is to be deemed the direct or proximate cause, and the former only the indirect or remote cause."). The cause-in-fact and legal cause elements are designed to enable courts and juries to differentiate between proximate and remote causes in a reliable manner.

As to legal cause, "foreseeability is considered 'the touchstone . . . ,' and it is determined by looking to the natural and probable consequences of the defendant's act or omission." Baggerly, 635 S.E.2d at 101 (quoting Koester v. Carolina Rental Ctr., Inc., 443 S.E.2d 392, 394 (S.C. 1994)). Typically, "the plaintiff need not prove that the defendant should have contemplated the particular event which occurred." Id. at 101 (citing Whitlaw v. Kroger Co., 410 S.E.2d 251, 253 (S.C. 1991) (per curiam)). However, in cases involving wrongful death by suicide, the death by suicide must be specifically foreseeable. Wickersham II, 853 S.E.2d at 332–33 (emphasis in original). "In every case of this character the inquiry is: Was the [suicide] a natural and probable consequence of the wrongful act, and ought it to have been foreseen in the light of the attendant circumstances?" Scott, 48 S.E.2d at 324.

In most cases, foreseeability ends up being addressed as a question of fact for the jury. Oliver v. S.C. Dep't of Highways & Pub. Transp., 422 S.E.2d 128, 131 (1992). In the first instance, however, legal cause is just what its name suggests—a question of law. "[W]hen the evidence is susceptible to only one inference . . . [legal cause] become[s] a matter of law for the court." Id. (citing Matthews v. Porter, 124 S.E.2d 321, 323 (S.C.

1962)); see also Gause v. Smithers, 742 S.E.2d 644, 649 (S.C. 2013) (discussing foreseeability, and stating "in rare or exceptional cases . . . the issue of proximate cause [may] be decided as a matter of law"). Therefore, whether Wickersham's suicide was a foreseeable consequence of Ford's tortious conduct is first a question of law for this court to decide. If the court determines Wickersham's suicide was not unforeseeable as a matter of law, legal cause—foreseeability—becomes a question for the jury.

Ford argues that plaintiff has offered no evidence that Wickersham's suicide was specifically foreseeable. In particular, Ford asserts that plaintiff presented no evidence to show that Ford was aware that an airbag injury would lead to suicide. As such, Ford maintains that it is entitled to judgment in its favor as to the wrongful death claims. Plaintiff adamantly disputes Ford's contention that she provided no evidence for the jury to find Wickersham's death a foreseeable consequence of the Escape's defective airbag. Plaintiff points to evidence that (1) Ford knew that defective airbags can cause serious injury, including the facial injuries suffered by Wickersham; (2) Ford knew that these types of facial fractures can cause severe, chronic pain; and (3) chronic pain is directly linked to suicidal ideation and suicide. In reply, Ford maintains that this syllogism does not satisfy plaintiff's burden of showing that it was specifically foreseeable that Wickersham would commit suicide as a result of injuries sustained by the Escape's defective airbag. Ford argues that this reasoning would make suicide foreseeable in virtually all crash scenarios.

The court agrees with plaintiff that she has provided sufficient evidence for a jury to find in her favor on the issue of foreseeability. Ford does not dispute that plaintiff presented sufficient evidence to create a jury issue on each of the three points of her

12

syllogism,[4] and rightfully so.  As plaintiff's response makes clear, she presented extensive evidence at trial to show how Ford studied the injury mechanisms of airbag deployment, automotive safety industry information, the risk of serious injury from frontal impacts, and common injuries resulting from airbags.  She presented evidence that Ford was specifically aware of the serious risks airbags pose, including Ford's acknowledgment in the Escape owner's manual that airbags carry a "risk of death or serious injuries, such as fractures, facial, and eye injuries or internal[ injuries]."  ECF No. 167 at 7 (citing T.[5] at 581).  Experts, including Ford's expert William Scott, testified that Wickersham's facial fracture pattern, the "Le Fort fracture," was a common airbag injury, as was Wickersham's "airbag eye hop."  Id. at 9 (citing T. at 506, 510, 562, 565, 1652–54, 1668–69).  Plaintiff likewise points to substantial evidence that she presented at trial to show the direct link between chronic pain and suicidal ideation, including expert testimony from Dr. Donna Schwartz-Maddox, an expert in psychiatry and forensic psychiatry; Dr. Thomas Bolt, Wickersham's treating physician; and Dr. Sheldon Levin, an expert neuropsychologist and clinical psychologist.  As such, Ford does not dispute that plaintiff has presented sufficient evidence to prove the syllogism.  Rather, it maintains that a reasonable jury could not find in plaintiff's favor on the issue of proximate cause based on that syllogism.  The court disagrees.

   Contrary to Ford's contention, the court does not find it a far stretch for a jury to conclude that suicide was a specifically foreseeable consequence of a defectively

---

[4] Counsel for Ford also conceded during the hearing that plaintiff presented sufficient evidence on all three issues.

[5] The jury transcript is available at ECF Nos. 135–44 in Wickersham v. Ford, No. 9:14-cv-00459-DCN.

deployed airbag when presented with evidence that airbags commonly result in facial injuries like Wickersham's, that those injuries cause severe chronic pain, and that severe chronic pain is directly linked to suicidal ideation and suicide.[6] Although Ford argues that plaintiff has presented no direct evidence that it was aware that an airbag injury would lead to suicide, it is well-established that proximate cause "may be proved by direct or circumstantial evidence." Baggerly, 635 S.E.2d at 101. Based on the circumstantial evidence of Ford's awareness of the likelihood of severe injury and chronic pain from a defective airbag and evidence suggesting that it is well-established that chronic pain increases the risk of suicide, a jury could find that Ford should have anticipated suicide as a reasonably foreseeable result of a defective airbag. In other words, the evidence plaintiff presents tends to show that Wickersham's injury, chronic pain, and resulting suicide were all part of a foreseeable chain of events—with the suicide naturally and probably flowing from the initial injury. See Scott, 48 S.E.2d at 324. To be sure, a jury may ultimately conclude that Ford should not have foreseen the risk of suicide in light of these attendant circumstances. However, the court is satisfied by the evidence presented that Wickersham's suicide is not so remote from Ford's conduct to warrant removing the foreseeability issue from the jury. The court certainly agrees that, at some point, the train of natural and probable consequences of a wrongful act becomes

---

[6] In their briefings, the parties do not analogize the facts of the instant case to any other South Carolina case addressing proximate cause, and, in light of the South Carolina Supreme Court's recent clarification on the law in suicide cases, the court likewise does not find any South Carolina caselaw particularly instructive on the specific foreseeability of suicide in this case. In any event, the particular facts and circumstances of each case determine whether the question of proximate cause should be decided by the court or by the jury. Collins v. Bisson Moving & Storage, Inc., 504 S.E.2d 347 (S.C. Ct. App. 1998); Small v. Pioneer Mach., Inc., 494 S.E.2d 835, 843 (S.C. Ct. App. 1997).

too long to pull and the couplings too weak to hold the cars together. However, the court finds the train of events before it has few enough cars and strong enough links for the question of proximate cause to continue its journey beyond the court and to the jury. Drawing all inferences in the light most favorable to plaintiff, the court finds that plaintiff submitted sufficient evidence of specific foreseeability of suicide to preclude judgment as a matter of law.[7]

### B. Motion for a New Trial

Ford additionally argues that if the court grants judgment as a matter of law in Ford's favor on the wrongful death claims, the Fourth Circuit opinion left open the question of whether Ford is entitled to a new trial on the survival claims. In short, Ford argued on appeal that if the wrongful death claims were not properly at issue at trial, then evidence of Wickersham's suicide was irrelevant and unduly prejudicial as to plaintiff's claims for Wickersham's pre-death injuries. Because the court finds that Ford is not entitled to judgment as a matter of law on plaintiff's wrongful death claims, the argument is moot. Ford itself acknowledges that its argument for a new trial on the survival claims is conditional on the court's grant of Ford's motion for judgment as a matter of law on the wrongful death claims. See ECF No. 169 at 5 ("If the court grants Ford's motion for

---

[7] Ford also misunderstands the implications of the court's finding in this case. The court is not finding that Wickersham's suicide is, as a matter for law, foreseeable based on the evidence before it. Rather, the court simply concludes that a reasonable jury could find that the evidence establishes that Wickersham's suicide was a foreseeable result of the defective airbag. Therefore, the court is hardly establishing liability for suicide in "virtually all crash scenarios"; rather, it is declining to flatly bar recovery in every such scenario. "Each case must be decided largely on the special facts belonging to it." Scott, 48 S.E.2d at 328. Therefore, while the facts in this case allow a reasonable jury to infer that Ford's conduct was a proximate cause of Wickersham's suicide, the facts of future crash cases will determine whether the question of proximate cause is decided by the court or by the jury.

judgment as a matter of law on plaintiff's wrongful death claim, a new trial is required as to plaintiff's survival claims based on the prejudicial impact of evidence concerning Wickersham's suicide." (all caps removed and emphasis added)). As explained above, the court finds that evidence related to the wrongful death claims—namely Wickersham's suicide—was properly admitted at trial. As such, Ford was not prejudiced in the jury determination of the survival claims by the admission of evidence of Wickersham's suicide. Ford never moved to bifurcate the trial of the wrongful death claims and that of the survival claims. Ford does not—and could not—now contend that it was prejudiced by the admission of evidence of wrongful death when it never moved to try those claims separately. Moreover, the court finds that evidence of Wickersham's suicide would have been admissible as to the survival claims, notwithstanding Federal Rule of Evidence 403, because the fact that Wickersham ultimately committed suicide is extremely relevant and highly probative to the extent and severity of his pain and suffering prior to his death and, by extension, plaintiff's loss of consortium during that time period.

More importantly, the court finds that Ford's argument for a new trial on the survival claims is untenable in light of the Fourth Circuit's order affirming judgment on those claims. Indeed, the Fourth Circuit clearly stated,

> [W]e vacate the district court's judgment <u>as to Wickersham's wrongful-death action and resulting $2.75 million damages</u> awards to Wickersham's estate and Crystal Wickersham. The district court should reconsider its ruling on Ford's Rule 50(b) motion. If it determines that Wickersham's wrongful-death action does not fail as a matter of law, <u>that portion of the case</u> must be retried. <u>We affirm the district court in all other respects.</u>

<u>Wickersham III</u>, 997 F.3d at 541. In other words, the Fourth Circuit specified that it was vacating only the wrongful death claims and resulting damages and that it was affirming in all other respects—which, of course, includes the judgment on the survival claims and

16

resulting $1.9 million damages. This court declines to strain the natural reading of the Fourth Circuit's order to reach a different outcome. As such, in light of the Fourth Circuit's order affirming the survival judgment, this court finds that plaintiff's survival claims are not properly at issue on remand and that the court is without authority to consider Ford's argument that a new trial is required as to plaintiff's survival claims based on any prejudicial impact of evidence concerning Wickersham's suicide. Therefore, even if this court were to grant Ford's Rule 50(b) motion, the judgment on the survival claims, having been affirmed by the Fourth Circuit, must stand. Ford's motion for a new trial on the survival claims is denied. [8]

---

[8] During the hearing, counsel for Ford argued that the Fourth Circuit's remand of the wrongful death claims reopens the question of whether the Escape's airbag was defective such that Ford's conduct was tortious. Although that contention has no bearing on Ford's instant motion for judgment as a matter of law and for a new trial, the court finds that Ford is barred from relitigating the issue of defect. As the court has explained, the Fourth Circuit remanded the $2.75 million judgment as to plaintiff's wrongful death claims and "affirm[ed] the district court in all other respects." Wickersham III, 997 F.3d at 541. Accordingly, the Fourth Circuit affirmed the $1.9 million judgment in plaintiff's favor on her survival claims. That judgment was based on the jury's findings (1) through (8) on the verdict form, including that the Escape was in a defective condition, that Ford was negligent in the design of the restraint system, and that Ford made and breached an express and implied warranty. See ECF No. 131. The Fourth Circuit's order only addressed and found error in jury findings (9) through (11) relating to the wrongful death judgment. Specifically, the Fourth Circuit took issue with the jury's finding that Wickersham suffered from an uncontrollable impulse to commit suicide that was proximately caused by Ford's wrongful conduct—finding (9)—and the corresponding amount of damages awarded by the jury—findings (10) and (11). Because the Fourth Circuit "affirm[ed] the district court in all other respects," the court finds that jury findings (1) through (8) stand. Moreover, because the issue of defect was already litigated and essential to the judgment on the survival claims, Ford is barred by res judicata from relitigating the same issue in the context of the wrongful death claims. See Taylor v. Sturgell, 553 U.S. 880, 892 (2008) ("Issue preclusion . . . bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.") (internal citations and quotations omitted).

## IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** the motion in full and declines to grant judgment as a matter of law in Ford's favor on the wrongful death claims or a new trial on the survival claims.

**AND IT IS SO ORDERED.**

                                **DAVID C. NORTON**
                                **UNITED STATES DISTRICT JUDGE**

**May 13, 2022**
**Charleston, South Carolina**