# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | |
|---|---|
| CRYSTAL L. WICKERSHAM, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> FORD MOTOR COMPANY, ) <br> ) <br> Defendant. ) <br> _____ ) <br> ) <br> CRYSTAL L. WICKERSHAM, *as personal* ) <br> *representative of the estate of John Harley* ) <br> *Wickersham, Jr.* ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> FORD MOTOR COMPANY, ) <br> ) <br> Defendant. ) <br> _____ ) | No. 9:13-cv-01192-DCN <br><br><br><br><br><br><br><br><br><br><br><br> No. 9:14-cv-00459-DCN <br><br> **ORDER** |

     The following matter is before the court on defendant Ford Motor Company's ("Ford") motion to preclude a retrial of wrongful death damages, ECF No. 199; plaintiff Crystal L. Wickersham's ("plaintiff") motion to preclude pretrial dispositive motions, ECF No. 201; and Ford's motion to compel, ECF No. 202.[1] For the reasons set forth below, the court (1) denies the motion to preclude a retrial of wrongful death damages, (2) denies the motion to preclude pretrial dispositive motions, and (3) grants in part and denies in part the motion to compel.

---

[1] All ECF Nos. refer to Case No. 9:13-cv-01192-DCN.

1

## I. BACKGROUND

Decedent John Harley Wickersham, Jr. ("Wickersham") was a pharmacist with a history of depression, bipolar disorder, and suicidal thoughts. On February 3, 2011, during a rainstorm, Wickersham drove his 2010 Ford Escape (the "Escape") through a T-intersection going roughly forty-two miles per hour, hit a ten-inch curb, went airborne, hit the ground, and crashed into a tree forty-five feet from the road. Wickersham suffered significant facial injuries—which required multiple surgeries, including one to remove his left eye—and the loss of his ability to smell or chew food.

After his accident, Wickersham had difficulty controlling his pain, despite many visits to pain specialists, surgeons, and doctors. He also continued to suffer from depression and was voluntarily hospitalized for severe depression and suicidal thoughts on April 6, 2012. On June 6, 2012, Wickersham began receiving nerve treatments at an Emory University pain clinic. When his health insurance expired, Wickersham became concerned he would be unable to afford the out-of-pocket costs of treatment. Because he could not be on pain medication while working as a pharmacist, Wickersham also struggled to maintain employment after his accident, causing his family a great deal of financial hardship. On July 21, 2012—almost a year and a half after his accident—Wickersham died by suicide after consuming a lethal dose of methadone.

Plaintiff, Wickersham's widow, filed two separate actions against Ford—one in her individual capacity and one as personal representative of Wickersham's estate. In the action brought in her individual capacity, plaintiff alleged a cause of action for loss of consortium. In the action brought in her capacity as personal representative of Wickersham's estate, plaintiff alleged wrongful death and survivorship causes of action.

Both actions additionally alleged three products-liability claims based on negligence, strict liability, and breach of express warranty and implied warranty of merchantability. The claims relied on the crashworthiness doctrine to assert that the airbag system in Wickersham's Escape was defective. The doctrine permits recovery for enhanced injuries caused by a car company's failure to design cars that account for the risks inherent to car crashes. See Donze v. Gen. Motors, LLC, 800 S.E.2d 479, 480–81 (S.C. 2017).

At trial, plaintiff asserted that the defective airbag caused Wickersham's severe facial injuries and that if the airbag had either not deployed so late or even not deployed at all, he would not have suffered these injuries. Ford argued that Wickersham was out of position when the airbag deployed, and his injuries were caused when his face impacted the gearshift lever. On August 26, 2016, the jury found in plaintiff's favor as to all claims and awarded $4.65 million in damages. Specifically, the jury awarded (1) $1,250,000 to Wickersham's estate for Wickersham's pain and suffering between the time of the accident and the time of his death; (2) $650,000 to plaintiff, in her individual capacity, for loss of consortium during the same period; (3) $1,375,000 to Wickersham's beneficiaries for his wrongful death; and (4) $1,375,000 to plaintiff, in her individual capacity, for her loss of consortium following Wickersham's wrongful death. In total, the jury awarded $2.75 million in damages in connection with plaintiff's wrongful death claims and $1.9 million in damages in connection with plaintiff's survival claims. In reaching those awards, the jury determined that the Escape was in a defective condition, that Ford was negligent in the design of the restraint system, and that Ford made and breached an express and implied warranty of merchantability. See ECF No. 131.

Ford appealed the judgments to the Fourth Circuit Court of Appeals. As relevant here, Ford argued that this court misapprehended South Carolina law on proximate cause in wrongful death cases involving death by suicide. This court previously determined that plaintiff could prevail on the wrongful death claims if she proved that Ford's actions led Wickersham to take his life due to an "uncontrollable impulse"—an exception to the general rule that suicide breaks the causal chain in wrongful death claims. In other words, this court held that Wickersham could prevail if the injuries sustained in the accident as a result of the defective airbag caused chronic pain that led to an uncontrollable impulse to commit suicide. Ford believed this interpretation of South Carolina law to be legal error that caused this court to both improperly deny its motion for judgment as a matter of law and improperly instruct the jury. Ford additionally sought a new trial as to the remaining claims based on the prejudicial effect of the evidence concerning Wickersham's death. The Fourth Circuit certified a question to the South Carolina Supreme Court on this issue:

> Does South Carolina recognize an "uncontrollable impulse" exception to the general rule that suicide breaks the causal chain for wrongful death claims? If so, what is the plaintiff required to prove is foreseeable to satisfy causation under this exception—any injury, the uncontrollable impulse, or the suicide?

Wickersham v. Ford Motor Co., 738 F. App'x 127, 129 (4th Cir. 2018) ("Wickersham I").

After the South Carolina Supreme Court answered the certified question, the case returned to the Fourth Circuit. The appellate court summarized the South Carolina Supreme Court's decision as follows:

> [T]here is no presumption in South Carolina that a death by suicide is unforeseeable as a matter of law. Accord [Scott v. Greenville Pharmacy,

4

> 48 S.E.2d 324, 328 (S.C. 1948)] ("Each case must be decided largely on the special facts belonging to it."). But "[i]n cases involving wrongful death from suicide, [South Carolina] courts have consistently decided legal cause as a matter of law." [Wickersham v. Ford Motor Co., 853 S.E.2d 329, 332 (S.C. 2020) ("Wickersham II")]. Accordingly, the district court must first decide whether Wickersham's suicide was "unforeseeable as a matter of law." Id. at 333. If not, "the jury must consider foreseeability" as well as causation-in-fact. Id.

Wickersham v. Ford Motor Co., 997 F.3d 526, 534 (4th Cir. 2021) ("Wickersham III"). In other words, the Fourth Circuit instructed that "not only does South Carolina law not recognize an 'uncontrollable impulse' exception to the general rule, but also it does not apply the general rule that death by suicide precludes foreseeability as a matter of law." Id. at 533. Instead, the South Carolina Supreme Court interpreted its past precedent to apply the state's traditional proximate cause requirements to wrongful death actions involving death by suicide. The Fourth Circuit noted that the South Carolina Supreme Court announced one key difference from South Carolina's usual foreseeability analysis. Typically, "the plaintiff need not prove that the defendant should have contemplated the particular event which occurred. But, in cases involving wrongful death by suicide, the death by suicide must be specifically foreseeable." Id. at 533–34 (internal citations omitted) (emphasis in original).

With the legal framework defined, the Fourth Circuit turned to its application in this case. First, it found that this court's analysis in denying Ford's Rule 50(b) motion as to plaintiff's wrongful-death action "differ[ed] in crucial respects from the proximate-cause framework that the Supreme Court of South Carolina announced." Id. at 534. Specifically, the Fourth Circuit found that this court had not applied the correct proximate cause framework of causation-in-fact and foreseeability. Id. "[A]lthough the court stated that it would consider whether Ford's conduct proximately caused Wickersham's

5

uncontrollable impulse [to commit suicide], South Carolina law requires an analysis of whether Ford's conduct proximately caused Wickersham's <u>death by suicide</u>." <u>Id.</u> (emphases in original). The Fourth Circuit thus concluded that "[b]ecause the court rejected traditional proximate-cause principles and does not appear to have explicitly analyzed the foreseeability of Wickersham's death by suicide, [the Fourth Circuit] cannot be certain that the district court's analysis comports with South Carolina law." <u>Id.</u> at 535. The Fourth Circuit therefore "remand[ed] for the district court—familiar as it is with the facts and record—to reconsider its Rule 50(b) motion under the proper legal framework." <u>Id.</u> at 535.

Second, the Fourth Circuit considered whether the court abused its discretion in denying Ford's motion for a new trial under Federal Rule of Civil Procedure 59(a). The Fourth Circuit agreed with Ford that the erroneous jury instructions required a new trial on the wrongful death claims because the instructions permitted the jury to find Ford liable without determining the foreseeability of Wickersham's death by suicide. <u>Id.</u> at 535–38. Because "the instruction allowed the jury to find for Wickersham without considering the most crucial and difficult-to-establish component of proximate cause," the improper instruction seriously prejudiced Ford, requiring vacatur of the wrongful-death judgments. <u>Id.</u> at 538. The Fourth Circuit accordingly instructed that "[i]f the district court does not decide Wickersham's wrongful death action as a matter of law under Rule 50(b), it must conduct a new trial on this claim." <u>Id.</u>

Additionally, by way of footnote, the Fourth Circuit acknowledged Ford's argument on appeal that if the court decided Wickersham's wrongful death claims in Ford's favor as a matter of law under the Rule 50(b) motion, that would mean (1) the

6

wrongful death claims would not be submitted to the jury, (2) Ford would be entitled to a new trial on the survival claims, and (3) evidence of Wickersham's death by suicide would be inadmissible for those remaining survival claims. Id. at 538 n.7.  However, because the Fourth Circuit remanded the case for reconsideration of Ford's Rule 50(b) motion as to the wrongful death claims, it did not reach a holding on the issue in its decision.  Instead, the Fourth Circuit affirmed the judgment on the survival causes of action.

In sum, the Fourth Circuit vacated judgment on plaintiff's wrongful death claims and remanded the case for this court to reconsider Ford's Rule 50(b) motion for judgment as a matter of law.  The Fourth Circuit instructed that if the court did not decide the wrongful death claims as a matter of law based on the motion, the court must conduct a new trial on the wrongful death claims only.  If the court decided Wickersham's wrongful death claims in Ford's favor as a matter of law on the Rule 50(b) motion, the Fourth Circuit left open whether Ford would be entitled to a new trial on the survival claims and what evidence would be admissible in that scenario.

Following the Fourth Circuit's ruling and remand, on May 13, 2022, the court denied Ford's Rule 50(b) motion for judgment as a matter of law, finding that under the foreseeability standard recognized by the South Carolina Supreme Court and stated by the Fourth Circuit, plaintiff had submitted evidence of foreseeability to preclude judgment as a matter of law.  ECF No. 174 at 15 (the "JMOL Order").  Because the court found that Ford was not entitled to judgment as a matter of law on the wrongful death claims, the court did not need to reach the secondary issue of whether Ford was entitled to a new trial on the survivor claims due to the prejudicial effect of Wickersham's

suicide. Id. at 17. Instead, the court ordered a new trial on plaintiff's wrongful death claims only. Id. at 10.

On March 20, 2023, Ford filed a motion to preclude a retrial of the wrongful death damages. ECF No. 199. Plaintiff responded in opposition on March 23, 2023, ECF No. 200, and Ford replied on March 30, 2023, ECF No. 205. On March 24, 2023, plaintiff filed a motion to preclude pretrial dispositive motions. ECF No. 201. Ford responded in opposition on April 7, 2023, ECF No. 211, and plaintiff replied on April 13, 2023, ECF No. 219. On April 24, 2023, Ford filed a motion to compel. ECF No. 202. Plaintiff responded to the motion on March 27, 2023, ECF No. 203, and Ford replied on April 3, 2023, ECF No. 208. On April 14, 2023, the court held a video hearing on the motions. ECF No. 220. As such, the motions have been fully briefed and are now ripe for review.

## II.   DISCUSSION

### A.   Motion to Preclude Retrial of Wrongful Death Damages

As discussed above, the jury at the first trial awarded $2.75 million in wrongful death damages to plaintiff. Following vacatur of the wrongful death verdict and on remand, this court found that Ford was not entitled to judgment as a matter of law on plaintiff's wrongful death claims, and the court ordered a new jury trial to decide the same claims. ECF No. 174 at 10. Ford now moves for the court to find that the retrial should be limited to liability only. Ford argues that should the jury find Ford liable for wrongful death in the retrial, the damages should be set at $2.75 million—the amount awarded by the first jury for the wrongful death claims.

Ford presents three arguments in support of its motion, and plaintiff responds to those three arguments while raising an additional two points. The court distills the arguments into three issues. First, the parties disagree about whether the language of the Fourth Circuit's opinion conclusively resolves the dispute. Second, the parties present competing positions on how to consider the issue of separability. Third, both parties appeal to the efficiency and fairness of their respective positions. The court considers each issue in turn and finds that the $2.75 million award should be vacated and retried along with liability.

### 1. The Fourth Circuit's Opinion

Ford's second argument in its motion begins by noting that neither party contested the amount of damages on appeal, suggesting that they should therefore be affixed. But as plaintiff notes, Ford was the party who appealed, and plaintiff was not required to file a cross-appeal on any or all issues that Ford did not raise. See Rosenruist-Gestao E Servicos LDA v. Virgin Enters. Ltd., 511 F.3d 437, 447 (4th Cir. 2007) (explaining that a cross-appeal is only required if the prevailing party specifically seeks to alter the judgment below). In that sense, the Fourth Circuit may vacate and remand any part of a judgment even when none of the parties have raised a particular issue on appeal. See Dopp v. HTP Corp., 947 F.2d 506, 518 (1st Cir. 1991) (collecting cases) ("An appellate court has broad discretion to remand for a new trial on all, or only some, of the issues in the case.").

Next, Ford argues that in one of Wickersham III's footnotes, the Fourth Circuit specified that "those damages must also be vacated if the wrongful-death claim is unsuccessful." ECF No. 199 at 6 (quoting Wickersham III, 997 F.3d at 530 n.1).

9

According to Ford, since this court did <u>not</u> determine as a matter of law that the wrongful-death claim was unsuccessful, nothing precludes the court from limiting the scope of the trial to liability because the Fourth Circuit was silent about vacating damages in that scenario.

Ford appears to read more into footnote one than was intended. As the court reads it, the Fourth Circuit was explaining that despite the fact it was separated on the verdict form, the $1.375 million in post-death loss-of-consortium damages awarded to plaintiff stemmed from the wrongful-death claim, just like the $1.375 million in wrongful-death damages. As a result, the damages should be aggregated and considered together. If anything, the footnote weighs against Ford because the Fourth Circuit seemingly contemplated that the damages would be tethered to the wrongful-death claim such that they would both be vacated.

To the extent footnote one is unclear, the court finds that the concluding mandate in the opinion clearly shows that the Fourth Circuit intended to have the court retry wrongful-death damages if the court ultimately ordered a new trial on liability. The Fourth Circuit stated:

> [W]e vacate the district court's judgment as to Wickersham's wrongful-death action <u>and resulting $2.75 million damages</u> awards to Wickersham's estate and Crystal Wickersham . . . . If it determines that Wickersham's wrongful-death action does not fail as a matter of law, <u>that portion of the case</u> must be retried.

<u>Wickersham III</u>, 997 F.3d at 541 (emphases added). Accordingly, in its JMOL Order, this court summarized the Fourth Circuit's ruling, stating that the Fourth Circuit "was vacating only the wrongful death claims and <u>resulting damages</u>." ECF No. 174 at 16 (emphasis added). That remains the court's finding, as the Fourth Circuit's opinion is

10

naturally read as vacating the $2.75 million award for damages relating to Wickersham's death in addition to the wrongful death claims for which they were awarded. The court denies Ford's motion on this ground.

### 2. Separability

Ford argues that several circuits have ordered a retrial on liability without disturbing the damages awarded at the prior trial when the issue of liability is distinct and separable from the issue of damages. ECF No. 199 at 4–5 (collecting cases from the First, Seventh, and Tenth Circuit).[2] Ford argues that here, the issue of liability is "entirely separate" from damages because even if the jury ultimately found that the defect in the airbag system proximately caused Wickersham's suicide, the damages recoverable because of Wickersham's death were decided on entirely separate grounds and would remain the same as before. Id.

In response, plaintiff argues that on at least two occasions, Ford represented that any retrial should include retrying damages. The court has reviewed the excerpts presented by plaintiff, and plaintiff's argument is well-taken. However, the court recognizes, as plaintiff did at the hearing, that this case is in a unique procedural posture, and some uncertainty remained following the Fourth Circuit's remand order. To the extent Ford took an inconsistent position at prior hearings and conferences, the court does not find that the statements rise to the level of demanding equitable estoppel.

---

[2] The only case plaintiff cites on this issue is Zeneca Ltd. v. Novopharm Ltd., 919 F. Supp. 193 (D. Md. 1996). But that case dealt with the effect of a factual finding following settlement and thus turned on the matter of issue preclusion. See id. at 196. The issue of bifurcation is a different matter altogether.

Turning back to Ford's legal authorities, plaintiff briefly attempts to distinguish Ford's cases by arguing that liability and damages are not separable here "because much of the evidence of wrongful death damages is relevant to the issues in [] Wickersham's life caused by the airbag injuries that led to his suicide." ECF No. 204 at 5. Ford disagrees and points out that the jury in the first trial was instructed to consider the following factors to determine the damages recoverable as a result of Wickersham's death:

> (1) pecuniary or economic loss,
> (2) mental shock and suffering,
> (3) wounded feelings,
> (4) grief and sorrow,
> (5) loss of companionship,
> (6) deprivation of the use and comfort of John Wickersham's society, including the loss of his experience, knowledge, and judgments in managing his affairs and the affairs of his beneficiaries,
> (7) loss of his ability to earn money for the support, maintenance, care, and protection of the beneficiaries, and
> (8) reasonable funeral expenses caused by his death.

ECF No. 199 at 4 (citing jury instructions).

Ford maintains that none of this evidence is necessary or integral to determining proximate cause. Ford's position is reasonable, but on balance, the court finds that retrying damages remains the preferred outcome. Although the eight items from the court's prior jury instructions appear to be comprehensive, it is certainly possible that evidence connected to the proximate cause and foreseeability issues could arise that relates to damages, or vice versa. The court considers this particularly likely given that Ford itself is either seeking or has been engaged in additional discovery. See ECF No. 202; ECF No. 211 at 2. In this respect, Ford's cases—where appellate courts specified that damages in their respective cases should not be retried—are not mandates for this court. First, the Fourth Circuit did not reach the same holding here—as discussed, it

likely held the exact opposite. Second, assuming guidance is absent, the decision to retry damages is subject to the district court's discretion, as Ford seems to concede in its argument about footnote one. See also Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd., 682 F.3d 292, 313 (4th Cir. 2012) (holding that a district court's refusal to award a new damages trial after the Fourth Circuit reversed the jury's verdict was subject to abuse of discretion). Just as the district court in Shandong concluded that a new trial on damages was unnecessary, this court concludes that circumstances permit a retrial on damages here.

### 3. Efficiency and Fairness

Finally, both parties appeal to principles of efficiency and fairness. Ford argues that a limited retrial would serve those considerations because the jury would not have to hear testimony from each of the beneficiaries, further eliminating the risk of unfair prejudice. Plaintiff responds that the beneficiaries will testify regardless of whether damages are at issue. The court finds that efficiency is better served by retrying damages. On appeal, the Fourth Circuit will have the "choice" of selecting between the $2.75 million and whatever amount the jury awards on retrial. Again, the court finds that the Fourth Circuit's opinion should be fairly read as vacating wrongful-death damages, but this decision affords Ford the benefit of doubt. With a retrial, the Fourth Circuit will be able to either adopt the re-tried award or vacate and adopt the $2.75 million award without the need for a third trial. For those reasons, the court denies the motion and orders a retrial on both proximate cause and wrongful death damages.

### B. Motion to Preclude Pretrial Dispositive Motions

Plaintiff moves for the court to preclude pretrial dispositive motions, arguing that the court's ruling on Ford's Rule 50(b) motion for judgment as a matter of law should have been the last order on a dispositive motion. Since the court determined that plaintiff had submitted sufficient evidence on the foreseeability of suicide to preclude judgment as a matter of law, Plaintiff argues that there would be no other basis for Ford to file another dispositive motion.

Ford disagrees, arguing that its Rule 50(b) motion only "tested the sufficiency []of the evidence presented <u>at the first trial</u>" by applying the legal framework for proximate cause articulated by the South Carolina Supreme Court and Fourth Circuit. ECF No. 211 at 2 (emphasis in original). According to Ford, the parties have been engaging in discovery to create a different factual record for the new trial, and Ford avers that it should be allowed to file a Rule 56 motion for summary judgment based on the new record.

As it noted at the hearing, the court has not identified any authority suggesting that the court may bar a party from filing a timely, valid motion. The most recent consent scheduling order provides that the deadline for all pretrial motions is April 21, 2023, so the deadline for such motions has not elapsed. On this point, plaintiff argues that Rule 56(a) provides that a "party <u>may</u> move for summary judgment" and suggests the court has discretion to disallow it, particularly given the unique procedural posture of this case. Fed. R. Civ. P. 56(a) (emphasis added).

Even if the court were to take that view, it exercises its discretion and denies plaintiff's motion. Rule 50(b) motions and Rule 56 motions for summary judgment serve

14

different functions. A Rule 50(b) motion is to be filed within twenty-eight days after the entry of judgment, Fed. R. Civ. P. 50(b), and should be awarded "if a reasonable jury could only reach one conclusion based on the evidence [from trial] or if the verdict in favor of the non-moving party would necessarily be based upon speculation and conjecture," Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). In other words, a motion for judgment as a matter of law asks the court to test the sufficiency of the evidence presented at trial. Here, the Fourth Circuit "remand[ed] for the district court . . . to reconsider its Rule 50(b) motion under the proper legal framework." Wickersham III, 997 F.3d at 535. That instruction referred to the court's denial of Ford's Rule 50(b) motion filed after the first trial. On remand, this court reconsidered the evidence presented in the first trial.

On the other hand, a motion for summary judgment asks the court to weigh the sufficiency of the evidence prior to submission of the case to the jury. To be sure, plaintiff is correct that the "unique procedural posture" of the case dictates that any summary judgment order will necessarily rely on evidence and findings from the first trial given that the court is limiting the issues at the second trial. ECF No. 219 at 2. As such, plaintiff argues that any pretrial motion for summary judgment filed now would be akin to a "successive summary judgment motion." Id.

Although any order on summary judgment would undoubtedly rely on the same law and similar evidence raised in the JMOL Order, the court finds that reason alone is not enough to find preclude any motion for summary judgment from being filed. Ford points to two non-exhaustive examples as to how the record evidence has changed since the court entered the JMOL Order. No motion for summary judgment is before the court

15

yet, so the court will not delve into the merits of Ford's evidence. But even without considering the merits, the court finds that Ford has credibly represented that there is new evidence such that any motion for summary judgment would not be entirely duplicative. For example, Ford states it has re-deposed plaintiff's expert psychiatrist, Dr. Donna Maddox ("Dr. Maddox"), and her testimony differs from what she previously provided. ECF No. 211 at 9 (citing ECF No. 211-1). Whether the change in testimony is enough to overcome the hurdle of summary judgment cannot be decided now, but Ford has presented some proof of new evidence.[3] As such, the court gives the parties the benefit of doubt that a motion for summary judgment would not be exactly duplicative of the issues decided in the JMOL Order. Absent another explicit reason for barring the motion, the court defaults to the view expressed above—that the court likely lacks the authority to prevent the filing of an otherwise valid motion. Therefore, the court denies the motion to preclude pretrial dispositive motions. The parties will have until April 21, 2023, to file any such motions, should they choose to do so.

### C. Motion to Compel

Finally, Ford moves the court to compel responses to Ford's third set of interrogatories and fourth requests for production. In response, plaintiff argues that the deadline for written discovery expired more than seven years ago because the Sixth Amended Scheduling Order set a discovery deadline of November 20, 2015. ECF No.

---

[3] For example, Dr. Maddox recently testified that there were "a set of risk factors" that contribute to suicide, and chronic pain was one of many. ECF No. 211-1, Dr. Maddox Dep. at 14:6–18. According to Ford, this contradicts Dr. Maddox's prior testimony about the foreseeability "syllogism" because she had purportedly testified that there was a direct relationship between chronic pain and suicidal ideations. ECF No. 211 at 9.

203 at 3 (citing ECF No. 31).  On remand, the parties agreed on a Consent Case Management Order, but the order only provides renewed deadlines for witness depositions.  ECF No. 198 at 2 (providing for plaintiff and defendant's witness depositions).  The order is silent as to written discovery.

In several cases in this circuit, the Fourth Circuit has specifically remanded a case with an instruction that the district court permit discovery.  E.g., Aldridge v. Goodyear Tire & Rubber Co., 198 F.R.D. 72, 76 (D. Md. 2000) (noting that the Fourth Circuit's opinion stated that plaintiffs were entitled to "limited discovery" on remand).  The Fourth Circuit did not issue such an order here.  Ford acknowledges that the Fourth Circuit did not weigh in on the need for additional discovery but argues that this provides this court with wide discretion to allow it if needed.  ECF No. 208 at 3–4 (citing Eshelman v. Puma Biotechnology, Inc., 2022 WL 1597819 (E.D.N.C. May 19, 2022)).  According to Ford, the circumstances here warrant the exercise of the court's discretion.  Specifically, Ford claims that given that the parties are now grappling with a new legal framework for analyzing proximate cause in a suicide case, the additional discovery would "develop the factual and expert bases for the parties' positions."  ECF No. 208 at 5.

In response, plaintiff argues that Ford has asked and plaintiff has answered "[a]ll but two of the new requests . . . in previous interrogatories and requests for production."  ECF No. 203 at 3.  Plaintiff refers to Ford's Interrogatory No. 2 and Request for Production No. 7.   In relevant part, Interrogatory No. 2 states:

> Please identify and describe any information in Plaintiffs' Decedent's possession or the possession of her experts regarding notice to Ford or other automotive manufacturers that airbag deployment and/or facial fractures make it so it is "specifically foreseeable" the injured party will commit suicide.

ECF No. 202-1 at 5.  Request for Production No. 7 requests:

17

>Any documents, notes, or reports, regarding notice to Ford or any other automotive manufacturer that airbag deployment or facial fractures make it so that it is "specifically foreseeable" the injured person will commit suicide.

Id. at 11.

In its response, Ford argues that that the interrogatories and requests for production seek information necessary for it to try the modified proximate standard, but Ford only presents Interrogatory No. 2 and Request for Production No. 7 as examples of requests that seek that end.  At the hearing, Ford agreed to withdraw its motion to compel as to the remaining discovery requests, and the court formally denies those requests as moot.

As to Interrogatory No. 2 and Request for Production No. 7, the court finds that the discovery being sought is relevant to the parties' claims and defenses.  The requests are reasonably connected to the foreseeability test discussed by the Fourth Circuit and on remand by this court.  Accordingly, the court grants the motion to compel as to those two requests only.

### III.   CONCLUSION

For the reasons set forth above, the court **DENIES** Ford's motion to preclude retrial of wrongful death damages, **DENIES** Wickersham's motion to preclude pretrial dispositive motions, and **GRANTS IN PART** and **DENIES IN PART** Ford's motion to compel, as set forth in this order.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**April 17, 2023
Charleston, South Carolina**